NAILAH K. BYRD
1200 Ontario
Cleveland, OH 44113

Case# CV21945849



RETURN RECEIPT REQUESTED ELECTRONICALLY

9314 8001 1300 3544 5118 43

PNC BANK, NATIONAL ASSOCIATION
CO CORPORATION SERVICE COMPANY
50 WEST BROAD STREET SUITE 1330
COLUMBUS OH 43215

EXHIBIT

A

CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV21945849 | D1 CM | 44071428 |

Rule 4 (B) Ohio

Rules of Civil Procedure

| | |
|---|---|
| BILLY CHAN | PLAINTIFF |
| VS | |
| PNC BANK, NATIONAL ASSOCIATION | DEFENDANT |

## SUMMONS

PNC BANK, NATIONAL ASSOCIATION
CO CORPORATION SERVICE COMPANY
50 WEST BROAD STREET SUITE 1330
COLUMBUS OH 43215

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



**Plaintiff's Attorney**

SAM ROBB
25200 CHAGRIN BLVD STE 200

CLEVELAND, OH 44122-0000

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

**Case has been assigned to Judge:**

WILLIAM T MCGINTY
Do not contact judge. Judge's name is given for attorney's reference only.

NAILAH K. BYRD
Clerk of the Court of Common Pleas

| DATE SENT | |
|---|---|
| Apr 2, 2021 | By_____ |
| | Deputy |

COMPLAINT FILED   04/02/2021



CMSN130

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| BILLY CHAN<br>4916 Westminster Ln<br>Broadview Heights, Ohio 44147 | ) ) ) | CASE NO. |
| | ) | JUDGE: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES AND REINSTATEMENT** |
| PNC BANK, NATIONAL ASSOCIATION<br>c/o Corporation Service Company<br>50 West Broad Street Suite 1330<br>Columbus, Ohio 43215 | ) ) ) ) ) | **JURY DEMAND ENDORSED HEREIN** |
| Defendant. | ) ) | |

Plaintiff, Billy Chan, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

### PARTIES AND VENUE

1. Chan is a resident of the city of Broadview Heights, County of Cuyahoga, State of Ohio.

2. PNC Bank is a corporation licensed and registered to do business in Ohio.

3. At all times, relevant herein, PNC operated an office located at 1900 E 9th St, Cleveland, OH 44114.

4. All of the material events alleged in this Complaint occurred in Cuyahoga County.

5. Therefore, personal jurisdiction is proper over PNC pursuant to Ohio Revised Code §2307.382(A)(1) and (4).

6. Venue is proper pursuant to Civ. R. 3(C)(3)&(6).

7. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.



## FACTS

8. Chan is a former employee of PNC.

9. PNC hired Chan on or around February 1, 2006.

10. At all times relevant herein, PNC employed Chan as an Analytics & Portfolio group manager.

11. Chan was born in China.

12. Chan is Chinese.

13. In 2013, Lakhbir Lamba became PNC's Executive Vice President of Analytics & Portfolio Management.

14. Lamba is Indian.

15. In 2013, Sanjay Gupta became PNCs's Head of APM Model Development.

16. Gupta is Indian.

17. During a team dinner, Gupta told Chan that he wanted to hire as many Indian employees as possible and that he would hire Indians and make jobs for them later ("Gupta's Racial Comments").

18. While making Gupta's Racial Comments, Gupta explained that he intended to replace Non-Indian employees with Indian employees.

19. During the team dinner, Chan asked Gupta if it was legal to create open positions, by terminating non-Indian employees in order to hire new Indian employees.

20. In response to Chan asking Gupta if it was legal to get rid of non-Indian employees in order to hire Indian employees, Gupta told Chan, "What are they going to do, sue me?"

21. In or around 2016, PNC appointed Sugata Chakravarty to the SVP Model Development Manager position.

22. Chakravarty is Indian.

23. In or around Mid-2016, PNC appointed Yan Chang as Chan's direct manager.

24. In or around Mid-2016, Chang issued Chan an optional mid-year performance review ("Optional Review").

25. The Optional Review was the first mid-year review Chan had been issued since working for PNC.

26. In the Optional Review, Yan issued Chan a negative performance assessment.

27. The Optional Review was Chan's first negative performance review during Chan's employment with PNC.

28. At the time Chang issued the Optional Review, she had supervised Chan for less than a month.

29. At the time Chang issued the Optional Review, she did not have sufficient firsthand information to evaluate Chan's performance.

30. Chang's negative assessment of Chan's performance recorded in the Optional Review has no basis in fact.

31. Chan's performance did not actually motivate the negative assessment of Chan's performance recorded in the Optional Review.

32. Chan's performance level was insufficient to motivate the negative assessment of Chan's performance recorded in the Optional Review.

33. Chang did not issue negative optional reviews to non-Chinese employees who performed at a level less than or equal to Chan's.

34. After receiving the Optional Review, Chan asked Chang why she had given him the Optional Review, and why she had assessed him negative scores on the Optional Review ("Optional Review Follow-Up").

35. In response to the Optional Review Follow-Up, Chang told Chan that Chakravarty had instructed her to issue the Optional Review to Chan.

36. In response to the Optional Review Follow-Up, Chang told Chan that Chakravarty had instructed her to issue negative scores on the Optional Review.

37. At the time of the Optional Review, Chakravarty was not Chan's direct manager.

38. At the time of the Optional Review, Chakravarty did not have sufficient information to evaluate Chan's performance.

39. Chakravarty did not order Chang to issue mid-year reviews to non-Chinese employees that were similarly situated to Chan.

40. Chakravarty did not order Chang to issue negative mid-year reviews to non-Chinese employees that were similarly situated to Chan.

41. Chakravarty ordered Chang to issue the Optional Review because Chan is Chinese.

42. Chakravarty ordered Chang to issue negatives scores on the Optional Review because Chan is Chinese.

43. On or around December 8, 2016, Chan virtually met with Lamba, Chakravarty, and Mike Desanzo, a project manager to walkthrough wholesale issues PNC was experiencing ("Wholesale Meeting").

44. Desanzo is Caucasian.

45. At all times relevant herein, Desanzo was similarly situated to Chan.

46. Chan was the only person of Chinese heritage present at the Wholesale Meeting.

47. Prior to the Wholesale Meeting, Chan and Desanzo had worked together to prepare a presentation for the meeting.

48. Prior to the Wholesale Meeting, Chakravarty told Chan not to speak during the meeting.

49. Prior to the Wholesale Meeting, Chakravarty told Chan that only Desanzo was allowed to speak during the meeting.

50. Chakravarty told Chan that he was not allowed to speak during the Wholesale Meeting because Chan is Chinese.

51. Not allowing Chan to speak during the Wholesale Meeting was an adverse action.

52. Not allowing Chan to speak during the Wholesale Meeting was an adverse employment action.

53. During the Wholesale Meeting, Lamba asked Desanzo several questions that Desanzo was unable to answer.

54. During the Wholesale Meeting, Chan spoke up and answered the questions Desanzo was unable to answer.

55. During the Wholesale Meeting, Lamba asked Chakravarty why Chan was not speaking.

56. After Lamba asked why Chan was not speaking, Chakravarty asked to speak with Lamba outside of the virtual meeting room.

57. After Chakravarty spoke with Lamba outside of the virtual meeting room, Lamba stopped asking Chan questions in the Wholesale Meeting.

58. On December 13, 2016, Chakravarty removed Chan from a commercial champion model project.

59. Chan had been assigned to the commercial champion model project by Laxmikant Shukla, one of PNC's Senior Vice Presidents.

60. Chakravarty did not remove non-Chinese employees, who were similarly situated to Chan, from the champion model project.

61. Chakravarty removed Chan from the commercial champion model project because Chan is Chinese.

62. Chakravarty removed Chan from the commercial champion model project because Chan spoke during the Wholesale Meeting.

63. Removing Chan from the champion model-project was an adverse action.

64. Removing Chan from the champion model-project was an adverse employment action.

65. On December 13, 2016, Chan emailed Lamba complaining that Chakravarty had removed him from the commercial champion model project ("December 2016 Complaint").

66. In the December 2016 Complaint, Chan also complained to Lamba about the Optional Review.

67. On December 13, 2016, after Chan made the December 2016 Complaint, Chakravarty contacted Chan and yelled and swore at Chan for making the December 2016 Complaint ("December 2016 Altercation").

68. Chakravarty did not yell and swear at non-Chinese employees who complained about their performance reviews.

69. Chakravarty did not yell and swear at non-Chinese employees who complained about being removed from projects.

70. Chakravarty engaged in the December 2016 Altercation because Chan is Chinese.

71. Chakravarty engaged in the December 2016 Altercation because Chan made the December 2016 Complaint.

72. Chakravarty engaged in the December 2016 Altercation in order to intimidate Chan.

Electronically Filed 04/02/2021 09:40 / / CV 21 945849 / Confirmation Nbr. 2219086 / CLLMD

73. Chan was intimidated by the December 2016 Altercation.

74. Chan felt uncomfortable in the workplace because of the December 2016 Altercation.

75. The December 2016 Altercation was an adverse action.

76. The December 2016 Altercation was an adverse employment action.

77. At the end of 2016, Chakravarty again order Chang to issue Chan a negative year-end review ("2016 Year-End Review").

78. Per Chakravarty's instructions, the 2016 Year End Review Chang issued to Chan was a negative review.

79. The negative assessment of Chan's performance recorded in the 2016 Year-End Review has no basis in fact.

80. Chan's performance did not actually motivate the negative assessment of Chan's performance recorded in the 2016 Year-End Review.

81. Chan's performance level did not justify a negative assessment of Chan's performance.

82. Chang did not issue negative year-end reviews to non-Chinese employees who performed at a level less than or equal to Chan's.

83. Due to the negative 2016 Year-End Review, PNC denied Chan approximately 80% of his year-end bonus ("Bonus Denial").

84. The 2016 Year-End Review and Bonus Denial were adverse actions.

85. The 2016 Year-End Review and Bonus Denial were adverse employment actions.

86. Following the 2016 Year-End Review, in early 2017, Gupta ordered Chan to assist Virag Masuraha, PNC's Senior Vice President of Retail Decision Analytics, in the Anti-Money Laundering Department, as well as complete his normal job duties ("Extra Work").

87. Masuraha is Indian.

Electronically Filed 04/02/2021 09:40 / / CV 21 945849 / Confirmation Nbr: 2219086 / CLLMD

88.  Chan had no prior experience working in Anti-Money Laundering.

89.  No employee of PNC could reasonably be expected to satisfactorily assist with projects in
     an unfamiliar department and complete their normal job duties.

90.  Gupta knew that neither Chan nor any other employee could successfully assist with projects
     in an unfamiliar department and complete their normal job duties.

91.  Gupta assigned the Extra Work to Chan in order to set him up to fail.

92.  Gupta did not order non-Chinese employees, similarly situated to Chan to assist with projects
     in an unfamiliar department and complete their normal job duties.

93.  Gupta assigned the Extra Work to Chan because Chan is Chinese.

94.  Gupta did not set up non-Chinese employees, similarly situated to Chan, to fail.

95.  Gupta set Chan up to fail because Chan is Chinese.

96.  On or around February 28, 2017, Chan called PNC's corporate ethics hotline and spoke with
     Jean Olenak, PNC's Senior Employee Relations Investigator, and filed a complaint of
     discrimination ("February 2017 Complaint").

97.  The February 2017 Complaint included a complaint that Chan's Optional Review was
     discriminatory.

98.  The February 2017 Complaint included a complaint that PNC did not treat Chan equal to his
     non-Chinese coworkers.

99.  The February 2017 Complaint included a complaint that Chakravarty was not allowing Chan
     to speak during meetings.

100. The February 2017 Complaint included a complaint that Chakravarty had reduced Chan's
     direct reports.

8

101. The February 2017 Complaint included a complaint that Chakravarty was removing Chan's job duties.

102. The February 2017 Complaint included a complaint about the Extra Work.

103. The February 2017 Complaint included a complaint about the December Alteration.

104. Olenak had a duty to report the February 2017 Complaint to PNC.

105. Olenak did report the February 2017 Complaint to PNC.

106. PNC has a policy to investigate reports of unlawful discrimination ("Investigation Policy").

107. Pursuant to the Investigation Policy, an investigation should include interviewing the complainant.

108. Pursuant to the Investigation Policy, an investigation should include interviewing the subject of the complaint.

109. Pursuant to the Investigation Policy, an investigation should include interviewing the subject of the reported discrimination.

110. Pursuant to the Investigation Policy, an investigation should include interviewing witnesses to the reported discrimination.

111. Pursuant to the Investigation Policy, an investigation should include getting a written statement from the complainant.

112. Pursuant to the Investigation Policy, an investigation should include getting a written statement from the subject of the complaint.

113. Pursuant to the Investigation Policy, an investigation should include getting a written statement from the subject of the reported discrimination.

114. Following the February 2017 Complaint, PNC did not interview Chan.

115. Following the February 2017 Complaint, PNC did not interview Chakravarty.

116. Following the February 2017 Complaint, PNC did not interview witnesses.

117. Following the February 2017 Complaint, PNC did not get a written statement from Chan.

118. Following the February 2017 Complaint, PNC did not get a written statement from Chakravarty.

119. Following the February 2017 Complaint, PNC did not get a written statement from witnesses.

120. PNC did not investigate Chan's February 2017 Complaint.

121. PNC did not discipline Chakravarty based on Chan's February 2017 Complaint.

122. By not disciplining Chakravarty at all based on the February 2017 Complaint, PNC ratified Chakravarty's conduct.

123. By not disciplining Chakravarty at all based on the February 2017 Complaint, PNC allowed Chakravarty's conduct to continue.

124. Upon information and belief, PNC informed Chakravarty about the February 2017 Complaint.

125. Upon information and belief, PNC informed Gupta about the February 2017 Complaint.

126. Upon information and belief, PNC informed Chang about the February 2017 Complaint.

127. Upon information and belief, PNC informed Masuraha about the February 2017 Complaint.

128. On or around April 4, 2017, Olenak informed Chan that PNC was closing their file on the February 2017 Complaint.

129. On or around August 8, 2017, Masuraha issued Chan a negative mid-year performance review, giving Chan the worst possible performance rating ("2017 Mid-Year Review").

130. Masuraha was not Chan's direct supervisor when he issued the 2017 Mid-Year Review.

131. The negative assessment of Chan's performance recorded in the 2017 Mid-Year Review has no basis in fact.

132. Chan's performance did not actually motivate the negative assessment of Chan's performance recorded in the 2017 Mid-Year Review.

133. Chan's performance level did not justify a negative assessment of Chan's performance in the 2017 Mid-Year Review.

134. Masuraha did not issue negative mid-year performance reviews to non-Chinese employees who performed at a level less than or equal to Chan's.

135. The 2017 Mid-Year Review was an adverse action.

136. The 2017 Mid-Year Review was an adverse employment action.

137. On August 9, 2017, Chan had a one-on-one meeting with Masuraha ("August 2017 Meeting").

138. During the August 2017 Meeting, Chan complained that the 2017 Mid-Year Review was discriminatory.

139. During the August 2017 Meeting, Chan complained that his performance did not justify a negative mid-year review.

140. During the August 2017 Meeting, Masuraha told Chan that he was issued the negative 2017 Mid-Year Review, because of his "history with managers." ("History Comment").

141. In making the History Comment, Masuraha was referencing the February 2017 Complaint.

142. During the August 2017 Meeting, Masuraha informed Chan that he had issued the negative 2017 Mid-Year Review because Chan made the February 2017 Complaint.

143. On or around August 14, 2017, PNC moved Chan to the Anti-Money Laundering Department full time ("Reassignment").

144. Following the Reassignment, PNC removed all of Chan's direct reports.

Electronically Filed 04/02/2021 09:40 / / CV 21 945849 / Confirmation Nbr: 2219086 / CLLMD

145. At all times relevant herein, PNC employed Amanda McCracken as a group manager in the anti-money laundering department.

146. McCracken is Caucasian.

147. At all times relevant herein, McCracken was similarly situated to Chan.

148. McCracken had multiple direct reports in the Anti-Money Laundering Department.

149. PNC provided direct reports to non-Chinese employees who were similarly situated to Chan.

150. PNC did not provide direct reports to Chan because he is Chinese.

151. Direct reports are essential to a group manager's job duties.

152. By not assigning Chan direct reports, PNC was interfering with Chan's ability to perform his job duties successfully.

153. Interfering with an employee's ability to perform their job duties is an adverse action.

154. Interfering with an employee's ability to perform their job duties is an adverse employment action.

155. Following the Reassignment, PNC required Chan to work on projects alone.

156. PNC did not require non-Chinese employees in the Anti-Money Laundering department to work on projects alone.

157. PNC required Chan to work on projects alone because he is Chinese.

158. Following the Reassignment, Chan repeatedly asked Masuraha for help ("Help Requests").

159. In response to the Help Requests, Masuraha told Chan to "deal with it" and to "work alone."

160. Masuraha did not tell non-Chinese employees who were similarly situated to Chan to work alone when they asked for help.

161. In or around September 2017, Masuraha informed Chan that PNC was placing him on a performance improvement plan ("September PIP").

162. At the time PNC placed Chan on the September PIP, Chan had worked full time in the Anti-Money Laundering department for less than a month.

163. At the time PNC placed Chan on the September PIP, Chan had been unable to successfully complete his job duties due to PNC's refusal to assign direct reports to Chan.

164. Chan's performance did not actually motivate PNC to place Chan on the September PIP.

165. Chan's performance level did not justify the September PIP.

166. PNC did not place non-Chinese employees who performed at a level less than or equal to Chan's on performance improvement plans.

167. The September PIP was an adverse action.

168. The September PIP was an adverse employment action.

169. The September PIP contained unreasonable and unrealistic deadlines.

170. PNC could not reasonably expect any employee to meet the criteria of the September PIP satisfactorily.

171. PNC knew that neither Chan nor any other employee could successfully meet the criteria of the September PIP.

172. PNC placed Chan on the September PIP in order to set him up to fail.

173. PNC placed Chan on the September PIP because Chan is Chinese.

174. On or around September 19, 2017, Chan filed a complaint of discrimination with the Equal Employment Opportunity Commission. ("EEOC Complaint").

175. In the EEOC Complaint, Chan complained that PNC treated him differently than his non-Chinese coworkers based on his race and national origin.

176. In the EEOC Complaint, Chan complained that PNC had retaliated against him for his February 2017 Complaint.

177. The EEOC notified PNC of the EEOC Complaint.

178. In response to Chan's EEOC Complaint, PNC did not interview Chan.

179. In response to Chan's EEOC Complaint, PNC did not interview Chakravarty.

180. In response to Chan's EEOC Complaint, PNC did not interview Olenak.

181. In response to Chan's EEOC Complaint, PNC did not interview Masuraha.

182. In response to Chan's EEOC Complaint, PNC did not interview witnesses.

183. In response to Chan's EEOC Complaint, PNC did not get a written statement from Chan.

184. In response to Chan's EEOC Complaint, PNC did not get a written statement from Chakravarty.

185. In response to Chan's EEOC Complaint, PNC did not get a written statement from Olenak.

186. In response to Chan's EEOC Complaint, PNC did not get a written statement from Masuraha.

187. In response to Chan's EEOC Complaint, PNC did not get a written statement from witnesses.

188. PNC did not investigate Chan's EEOC Complaint.

189. PNC did not discipline Chakravarty based on Chan's EEOC Complaint.

190. PNC did not discipline Masuraha based on Chan's EEOC Complaint.

191. By not disciplining Chakravarty at all based on the EEOC Complaint, PNC ratified Chakravarty's conduct.

192. By not disciplining Masuraha at all based on the EEOC Complaint, PNC ratified Masuraha's conduct.

193. By not disciplining Chakravarty at all based on the EEOC Complaint, PNC allowed Chakravarty's conduct to continue.

194. By not disciplining Masuraha at all based on the EEOC Complaint, PNC allowed Masuraha's conduct to continue.

Electronically Filed 04/02/2021 09:40 / / CV 21 945849 / Confirmation Nbr. 2219086 / CLLMD

195. Chakravarty's conduct continued after the EEOC Complaint.

196. Masuraha's conduct continued after the EEOC Complaint.

197. On February 5, 2018, Masuraha informed Chan that PNC was suspending Chan, allegedly
for inaccurately reporting the time he physically spent in the office ("February Suspension").

198. Prior to the February Suspension, PNC had not given Chan a verbal warning for allegedly
inaccurately reporting the time he physically spent in the office.

199. Prior to the February Suspension, PNC had not given Chan a written warning for allegedly
inaccurately reporting the time he physically spent in the office.

200. Prior to the February Suspension, PNC had not given Chan a final written warning for
allegedly inaccurately reporting the time he physically spent in the office.

201. Prior to the February Suspension, PNC never issued any written communication criticizing
Chan for allegedly inaccurately reporting the time he physically spent in the office.

202. PNC's assertion that Chan inaccurately reported the time he physically spent in the office
has no basis in fact.

203. PNC's assertion that Chan inaccurately reported the time he physically spent in the office
did not actually motivate PNC's decision to suspend Chan.

204. PNC's assertion that Chan inaccurately reported the time he physically spent in the office
was insufficient to motivate the suspension of Chan.

205. PNC permitted Chan to work remotely.

206. PNC did not require Chan to perform all of his work from the office.

207. PNC's assertion that Chan inaccurately reported the time he physically spent in the office
was pretext to suspend Chan.

208. PNC did not suspend similarly situated non-Chinese employees for allegedly inaccurately reporting the time they physically spent in the office.

209. PNC did not suspend similarly situated employees, who had not filed EEOC complaints, for allegedly inaccurately reporting the time they physically spent in the office.

210. On February 5, 2018, Chan sent an email to Bill Demchak, PNC's Chief Executive Officer, Joseph Rockey, PNC's Chief Risk Officer, Vicki Henn, PNC's Chief Human Resources Officer, and Gregory Jordan, PNC's General Counsel and Chief Administrative Officer, complaining about discrimination and retaliation ("February 2018 Complaint").

211. Demchak, Rockey, Henn, and Jordan had a duty to report the February 2018 Complaint to PNC.

212. Demchak, Rockey, Henn, and Jordan did report the February 2018 Complaint to PNC.

213. PNC had knowledge of the February 2018 Complaint.

214. In the February 2018 Complaint, Chan complained about being treated differently than his similarly situated, non-Chinese coworkers.

215. In the February 2018 Complaint, Chan complained about retaliation based on his reports of discrimination.

216. In the February 2018 Complaint, Chan complained about Gupta's Racial Comments.

217. In the February 2018 Complaint, Chan complained that the Adverse Actions were a discriminatory act.

218. In the February 2018 Complaint, Chan complained that the Optional Review was a discriminatory act.

219. In the February 2018 Complaint, Chan complained that the events surrounding the Wholesale Meeting were discriminatory acts.

220. In the February 2018 Complaint, Chan complained about PNC's inadequate response to the December 2016 Complaint.

221. In the February 2018 Complaint, Chan complained about retaliation following the December 2016 Complaint.

222. In the February 2018 Complaint, Chan complained that the December 2016 Altercation was discriminatory.

223. In the February 2018 Complaint, Chan complained that the Year-End Review was discriminatory.

224. In the February 2018 Complaint, Chan complained that the Extra Work was discriminatory.

225. In the February 2018 Complaint, Chan complained about PNC's inadequate response to the February 2017 Complaint.

226. In the February 2018 Complaint, Chan complained about retaliation following the February 2017 Complaint.

227. In the February 2018 Complaint, Chan complained that the 2017 Mid-Year Review was discriminatory.

228. In the February 2018 Complaint, Chan complained that the events surrounding the August 2017 Meeting were discriminatory.

229. In the February 2018 Complaint, Chan complained about the History Comment.

230. In the February 2018 Complaint, Chan complained that the Reassignment was discriminatory.

231. In the February 2018 Complaint, Chan complained about PNC's inadequate response to the EEOC Complaint.

Electronically Filed 04/02/2021 09:40 / / CV 21 945849 / Confirmation Nbr. 2219086 / CLLMD

232. In the February 2018 Complaint, Chan complained that the February Suspension was discriminatory.

233. In response to Chan's February 2018 Complaint, PNC did not interview Chan.

234. In response to Chan's February 2018 Complaint, PNC did not interview Chakravarty.

235. In response to Chan's February 2018 Complaint, PNC did not interview Olenak.

236. In response to Chan's February 2018 Complaint, PNC did not interview Masuraha.

237. In response to Chan's February 2018 Complaint, PNC did not interview Gupta.

238. In response to Chan's February 2018 Complaint, PNC did not interview witnesses.

239. In response to Chan's February 2018 Complaint, PNC did not get a written statement from Chan.

240. In response to Chan's February 2018 Complaint, PNC did not get a written statement from Chakravarty.

241. In response to Chan's February 2018 Complaint, PNC did not get a written statement from Olenak.

242. In response to Chan's February 2018 Complaint, PNC did not get a written statement from Masuraha.

243. In response to Chan's February 2018 Complaint, PNC did not get a written statement from Gupta.

244. In response to Chan's February 2018 Complaint, PNC did not get a written statement from witnesses.

245. PNC did not investigate Chan's February 2018 Complaint.

246. PNC did not discipline Chakravarty based on Chan's February 2018 Complaint.

247. PNC did not discipline Masuraha based on Chan's February 2018 Complaint.

248. PNC did not discipline Gupta based on Chan's February 2018 Complaint.

249. By not disciplining Chakravarty at all based on the February 2018 Complaint, PNC ratified Chakravarty's conduct.

250. By not disciplining Masuraha at all based on the February 2018 Complaint, PNC ratified Masuraha's conduct.

251. By not disciplining Gupta at all based on the February 2018 Complaint, PNC ratified Gupta's conduct.

252. By not disciplining Chakravarty at all based on the February 2018 Complaint, PNC allowed Chakravarty's conduct to continue.

253. By not disciplining Masuraha at all based on the February 2018 Complaint, PNC allowed Masuraha's conduct to continue.

254. By not disciplining Gupta at all based on the February 2018 Complaint, PNC allowed Gupta's conduct to continue.

255. On or around February 22, 2018, Masuraha informed Chan that PNC was terminating his employment, allegedly for inaccurately reporting the time he physically spent in the office.

256. PNC knowingly terminated Chan's employment.

257. PNC knowingly took an adverse employment action against Chan.

258. PNC knowingly took an adverse action against Chan.

259. PNC intentionally terminated Chan's employment.

260. PNC intentionally took an adverse employment action against Chan.

261. PNC intentionally took an adverse action against Chan.

262. PNC knew that terminating Chan would cause Chan harm, including economic harm.

263. PNC willfully terminated Chan's employment.

264. PNC willfully took an adverse employment action against Chan.

265. PNC willfully took an adverse action against Chan.

266. PNC did not terminate similarly situated non-Chinese employees for allegedly inaccurately reporting the time they physically spent in the office.

267. PNC did not terminate similarly situated employees, who had not filed EEOC complaints, for allegedly inaccurately reporting the time they physically spent in the office.

268. PNC did not terminate similarly situated employees, who had not filed complaints similar to the February 2018 Complaint, for allegedly inaccurately reporting the time they physically spent in the office.

269. PNC terminated Chan because Chan is Chinse.

270. PNC terminated Chan for reporting discrimination.

271. PNC terminated Chan because Chan made the EEOC Complaint.

272. PNC terminated Chan because Chan made the February 2018 Complaint.

273. The above facts demonstrate that PNC engaged in a pattern and practice of race discrimination.

274. The above facts demonstrate that PNC engaged in a pattern and practice of unlawful retaliation.

275. As a direct and proximate result of PNC's conduct, Chan suffered and will continue to suffer damages.

## COUNT I: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 et seq.

276. Chan restates each and every prior paragraph of this Complaint as if it were fully restated herein.

277. Throughout his employment, Chan was fully competent to perform his essential job duties.

278. PNC treated Chan differently than other similarly situated employees based on his National Origin.

279. PNC violated R.C. § 4112.01 *et seq.* by discriminating against Chan due to his National Origin.

280. At all times material herein, similarly situated non-Chinese employees were not terminated without just cause.

281. PNCs terminated Chan based on his National Origin.

282. PNC violated R.C. § 4112.01 *et. seq.* when it terminated Chan based on his National Origin.

283. As a result of PNC' discrimination against Chan in violation of O.R.C. § 4112.02(A), Chan has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Chan to injunctive, equitable, and compensatory monetary relief.

284. As a result of PNC' discrimination against Chan in violation of O.R.C. § 4112.02(A), Chan has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

285. In its discriminatory actions as alleged above, PNC acted with malice or reckless indifference to the rights of Chan, thereby entitling Chan to an award of punitive damages.

286. To remedy the violations of the rights of Chan secured by O.R.C. § 4112.02(A), Chan requests that the Court award him the relief demanded below.

**COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

287. Chan restates each and every prior paragraph of this Complaint as if it were fully restated herein.

288. Throughout his employment, Chan was fully competent to perform his essential job duties.

289. PNC treated Chan differently than other similarly situated employees based on his race.

290. PNC violated R.C. § 4112.01 *et seq.* by discriminating against Chan due to his race.

291. On or about February 22, 2018, PNC terminated Chan without just cause.

292. At all times relevant herein, similarly situated non-East Asian employees were not terminated without just cause.

293. PNC terminated Chan based on his race.

294. PNC violated R.C. § 4112.01 *et. seq.* when it terminated Chan based on his race.

295. As a result of PNC' discrimination against Chan in violation of O.R.C. § 4112.02(A), Chan has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Chan to injunctive, equitable, and compensatory monetary relief.

296. As a result of PNC' discrimination against Chan in violation of O.R.C. § 4112.02(A), Chan has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

297. In its discriminatory actions as alleged above, PNC acted with malice or reckless indifference to the rights of Chan, thereby entitling Chan to an award of punitive damages.

298. To remedy the violations of the rights of Chan secured by O.R.C. § 4112.02(A), Chan requests that the Court award him the relief demanded below.

**COUNT III: UNLAWFUL RETALIATION IN VIOLATION OF R.C. § 4112.02 (I).**

299. Chan restates each and every prior paragraph of this Complaint as if it were fully restated herein.

300. As a result PNC's discriminatory conduct described above, Chan complained about the race and national origin discrimination he was experiencing.

301. Subsequent to Chan's reports of race and national origin discrimination to PNC, PNC changed Chan's job duties and removed his direct reports.

302. Subsequent to Chan's reports of race and national origin discrimination to PNC, Chan was placed on a PIP that was impossible to achieve.

303. Subsequent to Chan's reports of race and national origin discrimination to PNC, Chan received unreasonably low performance evaluations.

304. Subsequent to Chan's reports of race and national origin discrimination to PNC, PNC suspended Chan.

305. Subsequent to Chan's reports of race and national origin discrimination to PNC, PNC terminated Chan.

306. PNC's actions were retaliatory in nature based on Chan's opposition to the unlawful discriminatory conduct.

307. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

308. As a result of PNC' discrimination against Chan in violation of O.R.C. § 4112.02(I), Chan has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Chan to injunctive, equitable, and compensatory monetary relief.

309. As a result of PNC' discrimination against Chan in violation of O.R.C. § 4112.02(I), Chan has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

Electronically Filed 04/02/2021 09:40 / CV 21 945849 / Confirmation Nbr. 2219086 / CLLMD

310. In its discriminatory actions as alleged above, PNC acted with malice or reckless indifference to the rights of Chan, thereby entitling Chan to an award of punitive damages.

311. To remedy the violations of the rights of Chan secured by O.R.C. § 4112.02(I), Chan requests that the Court award him the relief demanded below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Billy Chan requests judgment in his favor against Defendant, containing the following relief:

(a) An order directing PNCs to place Chan in the position he would have occupied but for PNCs' discriminatory, retaliatory and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Chan;

(b) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Chan for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(c) Awarding against each PNC compensatory and monetary damages to compensate Chan for lost wages, emotional distress, and other consequential damages, in an amount to be proven at trial;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Chan for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(e) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Chan for harm to his professional and personal reputation and loss of career fulfillment;

(f) An award of damages for any and all other monetary and/or non-monetary losses suffered by Chan in an amount to be determined at trial, plus prejudgment interest;

(g) An award of punitive damages;

(h) An award of costs that Chan has incurred in this action, as well as Chan's reasonable attorneys' fees to the fullest extent permitted by law; and

(i) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*/s/ Chris P. Wido*
Chris P. Wido (0090441) (Trial Counsel)
Samuel B. Robb (0099035)
**The Spitz Law Firm, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: chris.wido@spitzlawfirm.com
        sam.robb@spitzlawfirm.com

*Attorneys For Plaintiff Billy Chan*

Electronically Filed 04/02/2021 09:40 / / CV 21 945849 / Confirmation Nbr. 2219086 / CLLMD

## JURY DEMAND

Plaintiff Billy Chan demands a trial by jury by the maximum number of jurors permitted.

/s/ Chris P. Wido
Chris P. Wido (0090441)
**The Spitz Law Firm, LLC**

United States Postal Service ®

# CERTIFIED MAIL™



U.S. POSTAGE >> PITNEY BOWES

ZIP 44102
02 4W
0000367348    $ 007.15⁰
APR 02 2021