# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| BILLY CHAN, | ) | CASE NO. 1:21-cv-00938 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| PNC BANK, NATIONAL ASSOCIATION, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon Defendant PNC Bank, National Association's Motion for Summary Judgment. (R. 20). For the following reasons, the Motion is GRANTED.

## I. Procedure

Plaintiff Billy Chan filed a civil Complaint in the Cuyahoga County Court of Common Pleas alleging multiple claims against Defendant, his former employer. (R. 1-1). Specifically, Plaintiff alleges Ohio state law claims of discrimination based on race and national origin, as well as unlawful retaliation for Plaintiff's engagement in a protected activity. (*Id.*, PageID# 29–33 ¶¶ 276–311). Defendant removed the case to this Court on the basis of diversity jurisdiction. (R. 1, PageID# 2–4 ¶¶ 5–14).[1]

Now pending is Defendant's Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. (R. 20; R. 21). Plaintiff has filed an Opposition and Defendant a Reply. (R. 29; R. 30). The matter is fully briefed.

---

[1] This action, previously assigned to another District Court Judge, was reassigned to the undersigned on February 20, 2022.

## II. Facts[2]

### A. Plaintiff's Employment

Plaintiff, who is Chinese, began working for Defendant in 2006, but the pertinent facts relevant to the instant dispute between the parties begin in 2016. (R. 1-1, PageID# 11 ¶¶ 9–12). For the 2016 work year, Plaintiff's direct manager, Yan Chang, issued Plaintiff mid-year and end-of-year performance reviews indicating that Plaintiff only "Meets Some Expectations." (*Id.*, PageID# 12, 16 ¶¶ 23–26, 77–78; R. 21, PageID# 182–184; R. 22-1, Chan Depo., PageID# 242–244, 246–247, R. 22-2, PageID# 313–327). Approximately three months after his 2016 mid-year review, Plaintiff was instructed to stop working on a particular project involving commercial models and monitoring. (R. 22-2, Chan Depo. Ex. 5, PageID# 318; R. 29-9, PageID# 1266). Plaintiff alleges that his 2016 bonus was reduced by 80%. (R. 22-7, Olenak Dep. Ex. 7, PageID# 482; R. 21, PageID# 192). In early 2017, Defendant transferred Plaintiff to the Anti-Money Laundering Department. (R. 28-6, Chang Depo., PageID# 1055–1057; R. 29, PageID# 1195).

On February 24, 2017, Plaintiff filed a complaint of workplace discrimination with human resources. (R. 22-7, Olenak Depo. Ex. 5, PageID# 479; R. 28-2, Olenak Depo., PageID# 724–726; R. 21, PageID# 191–192; R. 29, PageID# 1195). On September 11, 2017, Plaintiff was issued another mid-year performance review, this one indicating that he "Does Not Meet Expectations." (R. 22-1, Chan Depo., PageID# 251–252; R. 22-2, Chan Depo. Ex. 7, PageID# 328–334; R. 21, PageID# 185). Defendant contends that in light of this poor performance review, Plaintiff was advised that he was required to work in person at Defendant's National City Center in Cleveland. (R. 21, PageID# 186; R. 22-4, Escofil Decl., PageID# 372 ¶ 6; R. 28-7, Escofil

---

[2] The following recitation of facts is undisputed unless otherwise indicated.

Depo., PageID# 1150).

On September 14, 2017, Defendant issued Plaintiff a written warning due to his job performance and placed him on a performance improvement plan. (R. 22-1, Chan Depo., PageID# 260; R. 22-2, Chan Depo. Ex 10, PageID# 335–348). On or about September 19, 2017, Plaintiff filed a complaint of discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission (EEOC), and the EEOC subsequently informed Defendant of Plaintiff's complaint. (R. 1-1, PageID# 22–23 ¶¶ 174–177; R. 28-2, PageID# 730–732; R. 28-7, Escofil Depo., PageID# 1158–1159). On December 14, 2017, Defendant placed Plaintiff on probation for purportedly failing to make material improvements in his job performance since his mid-year performance review. (R. 21, PageID# 186; R. 22-2, Chan Depo. Ex. 12, PageID# 349–353).

### B. Plaintiff's Alleged Misrepresentations and Termination

In January 2018, Plaintiff's then-manager Virag Masuraha told Employee Relations Specialist Tiana Escofil that he was concerned Plaintiff was not working out of his assigned PNC office despite being advised of this requirement following his prior performance review. (R. 28-7, Escofil Depo., PageID# 1150; R. 22-4, Escofil Decl., PageID# 372 ¶ 6). As a result, Escofil obtained Plaintiff's security badge swipe records for the prior three months and found that he had only reported to the National City Center office on five days in November 2017, three days in December 2017, and six days in January 2018. (R. 28-7, Escofil Depo., PageID# 1149–1153; R. 22-4, Escofil Decl., PageID# 372 ¶ 6; R. 22-4, Escofil Decl. Ex. D, PageID# 399, 409–411; R. 22-1, Chan Depo., PageID# 273–275).

On February 5, 2018, Escofil had a telephone conversation with Plaintiff, during which Plaintiff allegedly told Escofil that he knew he was required to work from the National City

Center Office, that he had not sought his manager's permission to work elsewhere, and that he worked almost daily from this required location. (R. 22-1, Chan Depo., PageID# 232; R. 22-4, Escofil Decl., PageID# 372–373 ¶ 7; R. 22-4, Escofil Decl. Ex. D, PageID# 404–406). Escofil then told Plaintiff that his badge swipe records did not support his statement that he worked from his required location daily, and Plaintiff then admitted that he worked entire days from home without permission. (R. 22-4, Escofil Decl., PageID# 372–373 ¶ 7; R. 22-4, Escofil Decl. Ex. D, PageID# 399, 404–406; R. 22-1, Chan Depo., PageID# 231–232; R. 22-3, Escofil Depo., PageID# 365–366).

Later that day, Escofil called Plaintiff again, this time informing him that he had been placed on paid administrative leave; Defendant intended to dismiss him for "dishonesty and poor performance." (R. 22-4, Escofil Decl., PageID# 372–374 ¶¶ 7–9; R. 22-4, Escofil Decl. Ex. D, PageID# 406; R. 22-1, Chan Depo., PageID# 232–233). That evening, Plaintiff sent an email complaint to several of Defendant's executives. (R. 22-1, Chan Depo., PageID# 237–238; R. 22-4, Escofil Decl., PageID# 373–374 ¶ 9).

Defendant terminated Plaintiff's employment, upon Escofil's recommendation, effective February 22, 2018, allegedly for dishonesty and poor work performance. (R. 22-1, Chan Depo., PageID# 276; R. 22-3, Escofil Depo., PageID# 367–368; R. 22-4, Escofil Decl., PageID# 374 ¶ 10).

### III. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Quinn v. Eshem*, 2016 WL 9709498, at *2 (6th Cir. Dec. 20, 2016). There is a genuine dispute as to a material fact when the "evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Non-moving parties may not rest upon the mere allegations in their pleadings nor upon general allegations that issues of fact may exist. *See Bryant v. Commonwealth of Ky.*, 490 F.2d 1273, 1275 (6th Cir. 1974). In ruling on a motion for summary judgment, the Court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990).

### IV. Analysis

#### A. Discrimination

Plaintiff alleges that he was terminated and suffered other adverse employment consequences due to his race and national origin in violation of Ohio Revised Code §§ 4112.01 and 4112.02(A). (R. 1-1, PageID# 29–31 ¶¶ 276–298). Under § 4112.02(A), it is unlawful "[f]or any employer, because of the race, color, [or] . . . national origin . . . of any person, to discharge without just cause, . . . [or] to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A).

The Ohio Supreme Court and Sixth Circuit have held that "federal case law interpreting Title VII [of the Civil Rights Act of 1964] is generally applicable to employment discrimination claims brought under Ohio Rev. Code § 4112.02."[3] *Hightower v. Keystone Automotive Indus.*,

---

[3] Title VII's parallel provision, 42 U.S.C. § 2000e-2(a), provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to

2023 WL 1412917, at *4 (N.D. Ohio Jan. 31, 2023) (*citing Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rts. Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981)); *Mitchell v. Toledo Hop.*, 964 F.2d 577, 582 (6th Cir. 1992) (holding that discrimination claims brought under Title VII and Ohio state law are examined using the same legal framework). Accordingly, the Court applies the federal evidentiary framework to resolve Plaintiff's state discrimination claims.

In the absence of direct evidence of racial discrimination, a plaintiff alleging such a claim under Title VII must satisfy the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). Under that framework, the plaintiff must first establish a prima facie case of racial discrimination by demonstrating that "(1) [the plaintiff] is a member of a protected group, (2) [the plaintiff] suffered an adverse employment action, (3) [the plaintiff] was qualified for the position, and (4) [the plaintiff] was replaced by a person outside of the protected class or was treated differently from similarly situated members of the unprotected class." *Michael*, 496 F.3d at 593; *see also McDonnell Douglas*, 411 U.S. at 802. If the plaintiff satisfies these factors, the burden shifts to the defendant to produce a legitimate non-discriminatory reason for the alleged discriminatory action. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758–59 (6th Cir. 2000). If the defense offers a legitimate non-discriminatory reason, then the burden shifts back to the plaintiff to show that this reason is pretextual. *Id.* A plaintiff can show pretext in three ways: by offering evidence that the defense's proffered reasons (i) had no basis in fact, (ii) did not actually motivate the action, or (iii) were insufficient to motivate the action. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996); *see also Smith v. Chrysler Corp.*, 155 F.3d 799, 805–06

---

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin."

(6th Cir. 1998).

1. *Termination*

Assuming without deciding that Plaintiff has established a prima facie case of racial discrimination, his claims still fail as they pertain to his termination. After Defendant proffered a non-discriminatory reason for his termination Plaintiff bore the burden of establishing that this reason was pretextual. Since Plaintiff never made such an argument in his briefing, he has abandoned these claims.

When a motion for summary judgment is "properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Blissit v. Fiquris*, 345 F. Supp. 3d 931, 937 (S.D. Ohio 2018) (internal quotation marks omitted) (*quoting Stansberry v. Air Wisc. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011)). Under Federal Rule of Civil Procedure 56, a party opposing summary judgment "may not rely on allegations or denials in its own pleadings but rather must offer evidence showing a genuine issue for trial." *Elec. Workers' Ins. Fund v. Applied Bldg. Techs., Inc.*, 2010 WL 1136497, at *1 (E.D. Mich. Mar. 22, 2010); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Moreover, Federal Rule of Civil Procedure 56(e) provides—and courts in the Sixth Circuit have similarly held—that if a party "fails to properly address another party's assertion of fact," then the trial court may "consider the fact undisputed for purposes of the motion" and find abandonment of the non-moving party's claim. Fed. R. Civ. P. 56(e)(2); *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) ("The District Court also properly

found that [the appellant's response] to the [motion for summary judgment] did not properly respond to the arguments asserted against his ADEA and ADA claims . . . . The District Court properly granted summary judgment because the Appellant failed to meet his Rule 56 burden."); *Justice v. Atchison*, 2009 WL 3413914, at *2 (E.D. Ky. Oct. 20, 2009) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived, and grant the motion." (*citing Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008))).

Here, Plaintiff never argues that Defendant's proffered non-discriminatory reason for Plaintiff's termination—namely, that Plaintiff misrepresented his work location to Escofil—was pretextual, so he has abandoned his claim that he was terminated due to his race or national origin. (R. 21, PageID# 186–189). The closest that Plaintiff comes to broaching the subject of pretext is his attempt to show that similarly situated employees were treated differently than him at PNC—in other words, that Defendant's proffered reason was insufficient to motivate his termination. (R. 29, PageID# 1199–1201). To demonstrate pretext in this manner, Plaintiff "must show by a preponderance of the evidence that 'other employees, particularly employees not in the protected class, were not fired even though they were engaged in substantially identical conduct to that which the employer contends motivated its discharge.'" *Santiago v. Meyer Tool Inc.*, 2023 WL 3886405, at *7 (6th Cir. June 8, 2023) (emphases omitted) (*quoting Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286–87 (6th Cir. 2012)).

Although Plaintiff points to "[a]ll other employees under Chang's [sic] supervision" that received higher performance reviews than Plaintiff as similarly situated to him, nowhere does Plaintiff contend that these colleagues were accused of making misrepresentations to Defendant. (R. 29, PageID# 1200). Simply put, there is no indication from Plaintiff's briefing that these

8

other employees engaged in "substantially identical conduct" to him such that they demonstrate Defendant's proffered reason for Plaintiff's termination is pretextual.

By failing to assert pretext, Plaintiff did not adequately respond to Defendant's proffered non-discriminatory reason for his termination. Accordingly, Plaintiff's discrimination claims pertaining to his termination fails because there is no disputed material issue of fact.

### 2. *Other Alleged Adverse Employment Actions*

The remainder of Plaintiff's discrimination claims—pertaining to his negative performance reviews, reduction of his 2016 bonus, and reallocation of job duties—also fail as a matter of law because Plaintiff cannot establish a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. Despite Plaintiff's arguments to the contrary, none of these measures constitutes an adverse employment action.

An adverse employment action in the context of a Title VII discrimination claim is a "materially adverse change in the terms or conditions of employment because of the employer's actions." *Michael*, 496 F.3d at 593 (*quoting Allen v. Mich. Dep't of Corr.,* 165 F.3d 405, 410 (6th Cir. 1999)). Adverse employment actions are "typically marked by a 'significant change in employment status,' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (*quoting White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc), *aff'd* 548 U.S. 53 (2006)).

In general, "a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (*quoting Tuttle v. Metro. Gov't of Nashville,* 474 F.3d 307, 322 (6th Cir. 2007)); *see also Holt v. Morgan,* 79 F.

App'x 139, 141 (6th Cir. 2003) ("A performance evaluation that is lower than an employee feels is warranted is not an adverse employment action sufficient to state a claim of discrimination."); *Baker v. City of Toledo*, 2007 WL 1101254, at *5 (N.D. Ohio Apr. 11, 2007) (holding "if a low evaluation does not affect an employee's raise or promotion, it is a *de minimis* employment action" and cannot support a prima facie case of discrimination). Plaintiff does not indicate that his substandard performance reviews had any adverse impact on his wages or salary, so these reviews—standing on their own—do not constitute adverse employment actions.

Additionally, lowering or eliminating a merit-based bonus is not an adverse employment action since employees are not entitled to such bonuses. *See Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999) (citing favorably to *Rabonovitz v. Pena*, 89 F.3d 482, 488–89 (7th Cir. 1996), which held that "low performance evaluation and consequent ineligibility for discretionary bonus [was] not actionable adverse employment action"); *Baker v. Pactiv Corp.*, 2004 WL 812994, at *3 (N.D. Ill. Apr. 14, 2004) (holding that a merit bonus increase less than the plaintiff had expected was not an adverse employment action because bonuses are "given on a discretionary basis" and that they are "not entitlements"); *see also Barrett v. Lucent Techs., Inc.,* 36 F. App'x 835, 843–44 (6th Cir. 2002) (holding that where Plaintiff did not receive a bonus because her employment was terminated for a "legitimate, nondiscriminatory reason," this was not an adverse employment action). Plaintiff's reliance on *HLS Bonding v. Ohio Civil Rights Commission*, 2008 WL 3522994 (Ohio Ct. App. 2008) to support his position to the contrary is misplaced. (R. 29, PageID# 1200). In that case, the court found that the defendant unlawfully retaliated against the plaintiff by, *inter alia*, reducing his pay. *HLS Bonding*, 2008 WL 3522994, at *5. But an employee's pay—unlike a merit bonus—is not subject to an employer's discretion. *See Michael*, 496 F.3d at 594 ("A materially adverse change might be indicated by . . . a

demotion evidenced by a decrease in *wage or salary*." (emphases added) (*quoting Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Accordingly, the reasoning in *HLS Bonding* does not apply to this case.

Finally, "[r]eassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis*, 97 F.3d at 885 (*citing Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987)). However, even if a reassignment is not paired with a salary or work-hour change, "it can nonetheless be considered an adverse employment action where there is evidence that the employee received 'a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Spees*, 617 F.3d at 391 (*quoting Kocsis*, 97 F.3d at 886).

Aside from one email that Plaintiff himself sent on February 24, 2017, saying that "all [his] work responsibilities . . . are gone," (R. 29-9, PageID# 1259), the record is bereft of any indication that Plaintiff's workplace responsibilities significantly diminished during the course of his employment. As far as the Court can glean from the evidence before it, the extent of the changes in Plaintiff's responsibilities amounted to (i) being asked to "not engage in the Champion C&I Models" and "[a]ny SME related monitoring" (*id.*, PageID# 1266), and (ii) his transfer to the Anti-Money Laundering department in early 2017 (*id.*, PageID# 1195). But these alterations of responsibilities, without any other evidence, do not support an argument that Plaintiff's responsibilities were so severely diminished as to constitute an adverse employment action. Indeed, the Head of Consumer Lending and Asset Resolution at Defendant, Lakhbir Lamba—whose deposition testimony Plaintiff cites to support this argument—did not comment

on whether the changes to Plaintiff's job constituted a removal of responsibilities. (R. 28-3, Lamba Depo., PageID# 778, 827–834; R. 29, PageID# 1194).

Plaintiff has failed to establish that any of the consequences that he suffered at work were adverse employment actions for the purposes of his discrimination claims. Accordingly, Plaintiff's discrimination claims fail in their entirety.

### B. Retaliation

Plaintiff's lone remaining claim is for unlawful retaliation in violation of Ohio Revised Code § 4112.02(I), which provides that it is "unlawful discriminatory practice" for "any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." Ohio Rev. Code § 4112.02(I). Plaintiff charges that Defendant unlawfully retaliated against him due to his engagement in three separate protected activities: (i) his first internal complaint, dated February 24, 2017; (ii) the complaint that Plaintiff filed with the EEOC on or around September 19, 2017; and (iii) the email complaint Plaintiff sent to several of Defendant's executives following his telephone conversation with Escofil, on February 5, 2018.

The *McDonnell Douglas* framework also applies to retaliation claims,[4] and Plaintiff once again bears the initial burden of establishing a prima facie case, which can be done by showing

---

[4] As before, the Court may look to federal law when analyzing the state law retaliation claim. *See Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 510 (6th Cir. 2016) ("Ohio courts have held that federal law provides the applicable analysis for reviewing retaliation claims brought under Ohio Rev. Code § 4112.02(I)." (internal quotation marks omitted) (alteration omitted) (quoting *Baker v. Buschman Co.*, 713 N.E.2d 487, 491 (Ohio Ct. App. 1998)) (citing *Plumbers*, 421 N.E.2d at 131).

"(1) that he engaged in a protected activity; (2) that the defendant had knowledge of his protected conduct; (3) that the defendant took an adverse employment action towards him; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (*quoting Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002)). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory reason for its actions. *Id.* at 526. If the defendant articulates such a reason, the plaintiff must then show that the defendant's stated reason is merely pretextual. *Id.*

As an initial matter, any potential adverse employment actions that Plaintiff experienced prior to the filing of his first internal complaint on February 24, 2017, are outside the scope of Plaintiff's unlawful retaliation claim because those actions could not have been caused by Plaintiff's engagement in a protected activity. Therefore, to the extent that Plaintiff asserts his retaliation claim regarding any of the following actions, such claim fails: (i) his mid-year and end-of-year 2016 substandard performance reviews, which were issued on September 1, 2016, and February 3, 2017, respectively (R. 22-2, Chan Depo. Ex. 5, PageID# 318; *id.*, Chan Depo. Ex. 6, PageID# 327); (ii) the reduction of his 2016 bonus, which occurred prior to his first internal complaint (*see, e.g.*, R. 29-9, PageID# 1253; R. 22-7, Olenak Depo. Ex. 5, PageID# 479–483); and (iii) the alleged reduction of his workplace responsibilities, which were detailed in emails dated February 24, 2017, and prior (R. 29-9, PageID# 1253, 1266). Accordingly, this leaves just two possible alleged retaliatory actions that were listed in Plaintiff's Complaint: his substandard mid-year 2017 performance review and his placement on administrative leave and subsequent termination in February 2018. The Court starts with the latter since it is the heart of Plaintiff's claim.

In support of his retaliation claim, Plaintiff makes the sole argument in his summary judgment briefing that because he can demonstrate temporal proximity between his protected activities and his termination, he has satisfied the causation prong for a prima facie case. (R. 29, PageID# 1202–1203). Setting aside for the moment that causation is merely a necessary, not sufficient, factor for establishing a prima facie case—and even that establishing a prima facie case, by itself, does not mean a claim survives summary judgment—Plaintiff has not satisfied the causation requirement.

Although temporal proximity between an adverse action and protected activity may serve as evidence of retaliation, such evidence standing alone is typically insufficient to establish a causal connection for a retaliation claim. *Tuttle*, 474 F.3d at 321. As summarized by the Sixth Circuit in *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008), where an adverse employment action "occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." However, when "some time elapses" between when the employer learns of a protected activity and the subsequent adverse employment action, the employee "must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* (*citing Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 365 (6th Cir. 2001)).

Although there is no bright line rule for the amount of time that may elapse between a protected activity and an adverse employment action before there is a lack of temporal proximity, the Sixth Circuit has noted that cases in which courts have found a prima facie case based on temporal proximity have generally involved periods of less than six months. *Id.* at 524 n.3. That being said, courts have also rejected temporal proximity arguments for periods of less

than six months. *See, e.g.*, *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that [the plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation."). Furthermore, "'an intervening legitimate reason' to take an adverse employment action 'dispels an inference of retaliation based on temporal proximity.'" *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 628 (6th Cir. 2013) (*quoting Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012)).

Plaintiff has failed to establish temporal proximity between any of his alleged protected activities and his subsequent placement on administrative leave and eventual termination. Plaintiff's first internal complaint of discrimination, filed on February 24, 2017, predated his termination by nearly one year; and his EEOC complaint, filed on or around September 19, 2017, did so by approximately five months. Apparently conceding that too much time had passed between these two activities and his termination for him to establish causation based solely on temporal proximity, Plaintiff's argument focuses on the short amount of time that elapsed between his email complaint to Defendant's executives, dated February 5, 2018, and his subsequent termination on February 22, 2018. (R. 29, PageID# 1202–1203). But Plaintiff offers no reason why the Court should cherry pick only his latest alleged protected activity for the purposes of determining whether there is temporal proximity between that activity and his termination; indeed, it appears that the complaints raised in the February 2018 email regarding Plaintiff's alleged mistreatment were similar to the issues raised in his February 2017 internal complaint and September 2017 EEOC complaint. (R. 29, PageID# 1196). That being the case, the Court finds that the temporal connection between Plaintiff's February 2018 email complaint and his termination to be tenuous at best, since Defendant did not retaliate against either of his prior, similar complaints with a swift termination. Therefore, Plaintiff has failed to satisfy the

causation requirement and has not established a prima facie case of retaliation.

Moreover, Plaintiff's attempts to satisfy causation fail for an even more fundamental reason. As the Court explained above regarding his discrimination claim, Plaintiff has not rebutted Defendant's proffered legitimate, non-discriminatory reason for Plaintiff's placement on administrative leave and subsequent termination—his work performance and misrepresentations to Escofil on February 5, 2018, about working in the office. Indeed, Plaintiff made these alleged misrepresentations to Escofil, and was consequently placed on paid administrative leave with the intention of termination, hours *before* he sent his email complaint to Defendant's executives. (R. 22-4, Escofil Decl. Ex. D, PageID# 404–405 (noting that Plaintiff made misrepresentations to Escofil at approximately 1:30 p.m. on February 5, 2018); *id.*, PageID# 406 (noting that Escofil contacted Plaintiff and advised him that he was being placed on paid leave on the same day at approximately 5:00 p.m.); R. 22-1, Chan Depo. PageID# 237 (Chan's testimony that he sent an email complaint to Defendant's executives at approximately 9:40 p.m. on the same day)). Not only does Plaintiff's dishonesty "dispel an inference of retaliation" based on temporal proximity because it is a legitimate ground for his placement on administrative leave and subsequent termination, Plaintiff never rebutted this non-discriminatory reason as pretext for his dismissal. Therefore, Plaintiff has not carried his burden pursuant to the final step of the *McDonnell Douglas* framework. Accordingly, Plaintiff's unlawful retaliation claim as it pertains to his placement on administrative leave and subsequent termination fails.

All that remains is Plaintiff's retaliation claim as it pertains to his 2017 mid-year performance evaluation, as well as Defendant's ensuing written warning and performance development plan. Because the review was conducted on or around September 11, 2017, and the written warning and development plan were issued three days later, the only protected activity

that could have resulted in retaliation was Plaintiff's February 2017 internal complaint. (R. 22-2, Chan Depo. Ex. 7, PageID# 329–334; R. 22-2, Chan Depo. Ex. 10, PageID# 336–339; R. 22-2, Chan Depo. Ex. 11, PageID# 341–348). But again, Plaintiff has failed to satisfy the causation prong of a prima facie case. Plaintiff's substandard work performance was well-documented prior to 2017, so a legitimate reason for his poor mid-year 2017 review is simply that Plaintiff did not meet the expectations of his job. The mere fact that Plaintiff filed an internal complaint approximately seven months prior to the issuance of his 2017 review does not sufficiently establish causation. Therefore, the remainder of Plaintiff's unlawful retaliation claim also fails.

### V. Conclusion

Defendant's Motion for Summary Judgment (R. 20) is GRANTED for the foregoing reasons. Therefore, this action is DISMISSED with prejudice.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: March 28, 2024